Good morning, your honors. My name is Rachel Kinstrand. I'm from the State Appellate Defender's Office. I represent the appellant, Albert Davis. I will take about 15 minutes for my argument in chief, and I'd like to reserve 3 minutes for rebuttal. Good morning, your honors. Assistant State's Attorney Brian Shinruba for the people of Illinois. I expect 15 minutes, your honors. All right, you're going to get 10 minutes, okay? I'll give you as much time as you need, really, but try to condense it. We have another argument at 1045, so I don't want to go too far over. No problem, thank you. All right, thank you. Counsel? By the way, you're probably aware, but the microphone is for recording purposes, not for amplification, so if you want to be heard, keep your voice up, please. I will do my best. May it please the court and counsel, I intend to focus on the first and fourth arguments of the brief, but I am happy to address the other arguments of the court as questions. At issue is whether the State proved Davis guilty beyond a reasonable doubt of residential burglary predicated on obstruction of justice, and whether he was denying his right to a proper admission of Officer Lopez's hearsay testimony in violation of Davis's right of confrontation, in which he recounted Taisha Daniels' out-of-court statement in which he denied knowing Davis. First, the State cannot prove Davis obstructed justice. To prove obstruction, the State had to show not only that Davis concealed physical evidence, a handgun in Powell's freezer, but also that he did so with the intent to prevent Hudson's prosecution. And it is the second element that the State's evidence is insufficient on. Here, the State's evidence did not show that Davis intended to prevent Hudson's prosecution because he was unaware that Hudson had committed a crime. There was no evidence that Hudson and Davis interacted, no witnesses saw them together, Maxwell admitted that he did not see Davis and Hudson interact, and the first time that he saw Davis was at his arrest. Well, let me ask you, if we agree with you on the first argument and reverse that conviction, what difference does the hearsay testimony make? What prejudice was there possibly to him in the hearsay testimony if we reverse the first conviction? Since on the other conviction, we have his admission that he put the gun in the freezer. Well, I mean, we have multiple charges, not just the residential burglary. We have the UUW by offense. So if we reverse the residential burglary and the only charge left standing is the UUW, what prejudice is there to him on the UUW from the admission of the hearsay statements, which I think the State acknowledges were hearsay and shouldn't have come in. Right. I think the, you know, notwithstanding my argument about the element of intent to prevent a crime, this case actually boiled down to a credibility contest because of course Davis On the first charge. Yeah. What about on the second charge? I'm saying on the UUW, there really was no credibility issue because he said, I put the gun in the freezer. Well, if you record, if you record Lopez's testimony, because Lopez's testimony about Davis's alleged confession is the only evidence that you really have that links him to the gun in the freezer. I mean, Powell says that But there's no, there's no evidence that didn't make that admission. So there's no credibility issue, I guess what I'm saying. Why would we not, why would we disbelieve Lopez? I understand why we disbelieve, I'm sorry, Angela, the woman whose apartment it was, but why would we disbelieve Lopez? Oh, because Davis testified. Davis testified in his defense. He denied, he gave an explanation for why he was at the apartment complex and denied, he denied making the statement. He denied, he denied all of it. So my, my, my point before is that, you know, we're in a trial, we're in a trial, we're in a presiding justice. It sounds like a fire alarm, but we'll wait. I believe, at your attention, this is only the best. Your logic is that this is only the best of the best. This is only the best. If this is actually the best, you would be further obstructing the other possibilities. This is only the best. See, I made that statement as the son of a fireman. So my instincts tell me that that's not real. We're sorry to interrupt you. Well, thank you very much. Well, right, Davis testified and he denied making admission and he offered a reasonable explanation for why he was at the apartment complex. I mean, we, we know he didn't live there. That's not disputed. He claimed he was there to visit Tyesha Daniels and he had spent the night there. And then he had been invited by Angela Powell's boyfriend to come over and play video games. I forgot that. And he also said he did not put the gun in the freezer. He never said he put the gun in the freezer. So you're saying had his girlfriend's testimony not come in, theoretically the jury could have believed him on that? Well, it was a bench trial. So in analyzing the credibility, I mean, really, you have Powell, who's the only one that actually saw anything. And, of course, she's denying at trial that she actually saw a gun. I mean, her testimony at trial was he came in and asked me to put something up for him and she didn't know what it was. Of course, that's also not what she told Officers of Lockheed. I mean, Officers of Lockheed gets up and testifies in the defense that when we talked to Powell, she didn't say anything about him putting a gun in the, she didn't say anything about him asking her to put something up for him or following him around in the apartment. So I think in the balance when you're analyzing the credibility of these two witnesses, and you've got Davis testifying, and you've got Powell testifying on his own behalf, and you have Powell testifying, and her, you know, for a variety of reasons, her testimony is not only impeached, but it's severely undercut by the fact that she's a Section 8 housing tenant. I understand that. I just don't, but her testimony is nothing, is not really the basis for his conviction for the UUW. That's really his alleged statement that he put the gun in the fridge. Right. And the argument that I made on that second point is that it's, that's insufficient because it's not the case. Because it's a corpus delicti issue. That there's not sufficient corroboration of his, of what actually happened. So that's the second. I mean, that's not what I intended to focus on. Right. I understand. I was trying to understand how the hearsay impacts that. You answered that. Okay. All right. So going, so returning to the first part of the argument on the obstruction charge, as I pointed out, nobody saw Hudson and Davis together. Davis wasn't on the dash cam video, which was introduced by the state. He wasn't present when Hudson was running away or when Hudson pointed what looked like a gun at Officer Maxwell. And even, even if this court assumes that Officer Lopez's statement about what Davis told him or told Officer Zablocki was true, that's still insufficient to show that he intended to prevent Hudson's prosecution. What Davis reportedly said was that he saw Hudson running into the  Then he picked up the handgun and pointed it at Officer Maxwell. put the gun in the freezer. Hudson's act of running away is not a crime. The act of discarding a gun is not a crime. Having a gun outside the home is not per se illegal, and there's no evidence that Davis knew it was illegal for Hudson to have a gun. Lopez's testimony about Davis's statement did not indicate that he saw the police chasing Hudson, and it never indicated that he saw Hudson   And when he was running away, he pointed the gun at Officer Maxwell. When he talked to Officer Lopez and Officer Zablocki, he never said in that statement that he wanted to help Hudson out. So the case law is pretty, actually pretty favorable on this issue, both Jenkins, Comage, and Kotelinski. And Kotelinski especially, in that case, the defendant was a passenger in a car that had been pulled over by the police for expired takes. His wife was driving, it was New Year's Eve.  station. They were running field sobriety tests on the wife. She gets out of the car, goes to the back of the expedition. The officer's testifying that he's running field sobriety tests. At some point, the husband gets out of the passenger seat. He's immediately told to go back into the car. Some conflict ensues. He does get back into the car, but eventually the arresting officer and another officer who's on the scene end up teasing him and charging him with obstruction of justice. Now, the second quarter, the appellate court in the second district held that that did not prove that he intended to obstruct an investigation because as he was sitting in the front seat of the car, he could not know what stage the other officer was in in performing the field sobriety test. Now, if being pulled over by a police officer and being in the middle of a traffic stop is not a sufficient inference to lead to an obstruction of justice charge, particularly on that element of intent to prevent prosecution, then I fail to see how this particular scenario can support Davis' obstruction. Okay, again, if we agree with you, would you be asking us to remand for resentencing or is that all moot since your client is out of jail? Well, I think if the obstruction charge falls away, the residential burglary charge falls away. I understand. It's dependent on the obstruction. Exactly. But there's still the UDW charge. Which also I'm contesting in my case. Let's say we agree with you on one and not on the other. What would be the remedy other than vacating that conviction? Well, he'll take vacating the residential burglary charge. There's no point in remanding. He's out by all the information I have compliant, so there's really nothing to be done. On the first charge, you could reduce to criminal trespass, but again, that's sort of pointless because it would be a lesser sentence anyway. The first charge is dependent on their beginning of obstruction. That's the predicate. Right, right. And I also wanted to point out that the trial court's comments at sentencing, when she made her oral ruling, she said, there wasn't really much reasoning behind it in the transcript. She said it's not home invasion, but it's residential burglary obstruction in UDW. But when she got to sentencing and was considering what sentence to impose, she stated, Mr. Davis, whether he knew or had known what Mr. Hudson had done, I don't know. What I do know is that the court did find Mr. Hudson, handled him off a gun, Mr. Davis, or of the belief he was doing his friend a service, injured a resident's belonging to somebody else, and put the gun in hiding. But if Davis did not know what Hudson had done, then he can't be guilty of attempting to impede Hudson's prosecution, because to hold otherwise turns this into a strict liability offense. And I would also point out that under Clemage, which is an Illinois Supreme Court case that I cited in the brief, Davis didn't materially impede the prosecution of Hudson, because Hudson was quickly apprehended, and the police had the opportunity to investigate the entire incident on dash cam video. They had witnesses to the attack. Well, it doesn't matter whether he was successful or not. If his intent was to impede, it doesn't matter whether or not it was successful, correct? In impeding the prosecution of his friend. If his intent was to impede, it doesn't matter whether it was successful. Right, well, it wasn't successful. Right, but I think this is sort of a fact-dependent inquiry, so one of the things that the cases consider is how long it took between the incident and apprehension. And this was a matter of seconds to a few minutes. This wasn't something that dragged on, or this was something that was resolved in a matter of minutes. And they had the evidence to show what Hudson did, even without  And they had evidence to show what Hudson did, even without a gun. And that's really the point I'm trying to make with the material That's really the point I'm trying to make with the material impeding. impeding. impeding. Are you saying that the judge's comments of sentencing indicate that she wasn't even convinced that Mr. Hudson was acting with the intent to obstruct the justice. She just didn't know, but in any event it was obstruction. She just didn't know, but in any event it was obstruction. Mr. Davis, so she was No, I mean her comments of sentencing, that's what you brought up. Right, I think it highlights the problem with this charge. Right, I think it highlights the problem with this charge. So her comments of sentencing, that she doesn't know what Davis intended to do if he was just helping out a friend, that's problematic because obstruction is a specific intent crime. You have to show knowledge. You can't just show concealment. We understand that. I'm just asking, you brought up the judge's comment of sentencing. Would it be unreasonable to interpret that comment of sentencing as just a form of verbalization as just a form of verbalization that was a transition, so to speak. Not that she was finding that she couldn't tell what his intent was. It was just, she said, well, blah, blah, blah, I don't know, and then she went on. I personally interpreted that as just a judge speaking and trying to collect her thoughts as to what was before her and trying to collect her thoughts as to what was before her at that time of sentencing, not at the time of entering judgment. at that time of sentencing, not at the time of entering judgment. Right, I agree, it's not the equivalent of her guilty finding. I agree with that, but I think it does explain a lot. Right, I mean, because this is sort of a strange charge. I mean, residential burglary based on obstruction. I mean, in the years I've been doing this, I haven't seen this. To me, it strikes me as an attempt to try to shoehorn this into a more serious felony. And I think to the extent it colors what happened in a bench trial, And I think to the extent it colors what happened in a bench trial, I think it highlights the problem of it. And I think this is an area that's just fact-dependent, and I think, as I pointed out earlier, that you just can't get to that element of him actually intending to prevent Hudson's prosecution in this case. Even if you take all of the State's evidence as true, it's still insufficient. Would you like to touch on a few other matters briefly, because your time is fast? I can touch briefly on argument four if you'd like. That was the second argument that I intended to address. I mean, I just pointed out that the State concedes this as hearsay. I also think that it's clearly done in violation of this right of confrontation, because... Who's the prejudice? The prejudice is the credibility determination, because you basically have two fact witnesses, right? You've got Powell, who's impeached, and then you've got Davis disputing that any of this happened. And you've got Davis offering a reasonable explanation for why he was at the apartment complex. And the admission of Lopez's testimony about this out-of-court statement just completely, completely undercut that, and he had no opportunity to cross-examine Daniels. So I think it was particularly harmful in weighing out the credibility of these witnesses. If there was a matter that was trying to be asserted in the statement, it was that he was at her apartment. That's irrelevant to what happened as a substance of the charges. The substance of the charges was he was present in an apartment. One witness said he wasn't invited. He said he was invited by her father, boyfriend, whoever it was. It wasn't whether he was at her apartment. So I really have difficulty seeing. I agree it was hearsay, and I agree it would better have been left out of the case. But I fail to see where the prejudice of that statement is. Well, I think it undercuts what he's testifying to. And so his explanation, he's there. Paolo and Daniels supposedly know each other. They're friends. So he spends the night at Daniels' apartment, and then Paolo's boyfriend, Perry Reed, calls him, and he goes over and plays video games. That's his story. That's his story. So I think, you know, if you take that and you couple it with the error that I asserted in the number three, which is let's let in all of his prior convictions and his sentences, I think if you look at what happened at trial as a whole, I think it completely undercut his credibility, even though he's offering a reasonable explanation for why he's there. I mean, this isn't some, you know, strange story. I mean, that's a logical thing. I mean, even Paolo admitted at trial that at one point he pulled a video game controller off of the fridge. So it's not like he's pulling this out of a hat. But it had nothing to do with whether he was at his girlfriend's apartment or not. Well, if it didn't, why would the state introduce it then? Because the state does things all the time that don't make sense. But that doesn't mean that it's prejudicial. That's my only point. I don't want to beat it to that. Yeah. But, I mean, again, my response to that is I think if the state didn't believe that it had any value, they wouldn't have introduced it. That's not true. That's not true. You know it's not true. Her statement was that she didn't know him. Right. That was her statement. Yeah. So then she couldn't have been his girlfriend if she didn't know. Right. And that would undercut his whole story. Right. And it tended to support the state's argument that he just burst into Paolo's apartment with no reason. Right. I mean, that he didn't, she's disclaiming knowing him. The grandfather called him Bud, but, you know, we don't know if he knew them. There's nothing to support his claim about Squirrel and Perry Reed, which is her boyfriend Squirrel, about the video game. So, I mean, I think that's my argument. All right. Okay. And if you agree it was played, you'd have to meet the played error standard. I agree. But I think the evidence is closely balanced. I mean, I think we've got two competing versions. I think it's consistent with Naylor. So, for these reasons, I'd ask the court to reverse this conviction or alternatively on Argument 3 and 4, reverse and remand for a new trial. Thank you. Thank you. Mr. Chinuba? Did I pronounce that correctly? Yes, Your Honor. All right. Impressive. May it please the Court. Good morning, Your Honors. Assistant State's Attorney Brian Chinuba for the people of Illinois. All right, Your Honors. This is a classic case of circumstantial evidence proving the defendant guilty. Looking at all the facts together in their entirety, it's clear that the prosecution proved the defendant guilty of his crimes by simply presenting the facts to a trial judge in this instance and allowing the judge to use their common sense to fill in any gaps. Where is the evidence of obstruction? What's the evidence of obstruction? Would you agree it's necessary to present evidence? Yes, Your Honor. I agree. I'd argue that the evidence for obstruction comes from the entire record. You've got to be more specific than that, I think. I agree. If you look at the beginning of this case, it begins with the chase to Angela Powell's residence. So we know for a fact that Officer Maxwell received a call from dispatch about a man with a gun while he was traveling southbound on Kedzie Avenue. We also know that Officer Maxwell chased this man, fitting the description to Angela Powell's apartment complex. During that chase, the suspect turned around, aimed a gun at Officer Maxwell, and attempted to fire that gun at him. After arriving at the complex, Officer Maxwell lost sight of the suspect for only three or four seconds. After regaining sight of the suspect, who was only a few feet away from Angela Powell's residence, he managed to apprehend the suspect without any more problems. He couldn't find the gun on the suspect's person or in the immediate vicinity.  Excuse me, Your Honor? Was it in the apartment? Did he go into that apartment? The gun? I think if you look at the testimony... After he threw the gun... Sorry, Your Honor? Lopez said that he retrieved the gun, went into an apartment, put the gun in the freezer. I believe that the officers testified that they retrieved the gun from the freezer. And it's my argument that the only logical explanation for how the gun got there is the defendant, in this case, placed the gun in the freezer. You have a statement that he placed the gun in the freezer. Yes, Your Honor. What evidence, according to Judge McCliskey's question, what evidence is there to infer that the defendant knew he was being chased by the police, that the police were investigating him for possession of a weapon or whatever? What evidence is there that the defendant knew of this police activity? I think there's circumstantial evidence that... And what is that? It's the fact that the co-defendant was found, was apprehended only a few feet away from Angelo Powell's residence, and he only was out of sight of Officer Maxwell for three or four seconds. So that would, to me, indicate that they apprehended the same person they were chasing. That would be circumstantial evidence that the person I chased was the person I arrested. Now, the question is, Mr. Davis was charged with obstructing that arrest and or prosecution. Connect Mr. Davis to that chase. That's the question. It's my argument that Mr. Davis is connected to the chase due to the fact that he was the only person with a motive and opportunity to hide the gun. During the co-defendant's arrest, Angelo Powell was preparing for Thanksgiving. She testified that the defendant arrived suddenly in a panic. He paced around her apartment from room to room, and he asked her to hide something for him. She also testified that she did not know the defendant well, and he had no right to be in her residence. What do you mean by put something up? I believe that means hide something, Your Honor. So at this time, the police arrived at the scene, and they saw the door to Angelo Powell's apartment slam shut. Both the officers and Angelo Powell testified that the defendant was the person who had just entered her apartment during the time of the co-defendant's arrest, and upon searching the freezer, the police did find the same gun that Officer Maxwell identified. And following this, the defendant admitted to the police that he placed the gun in the freezer because he was good friends with the co-defendant in this case. Children were going into Powell's apartment? Children were entering Powell's apartment? I'm sorry, can you ask that again, Your Honor? Judge Simon asked if there was evidence that children were also entering the apartment? There was evidence. Okay. But again, back to Judge Mitka's original question. Is there any evidence at all from which to infer that the defendant knew that the co-defendant, as it were, was being chased by the police? There's no direct statement, Your Honor. However, I believe there's a mountain of circumstantial evidence. Did any police officers see Mr. Davis enter the apartment? No, Your Honor. So get to the mountain. Well, when you look at these facts in their entirety, I think the trial judge's inferences, when looked at in the light most favorable to the prosecution, prove that the state proved the defendant guilty of residential burglary, unlawful use of possession of a weapon by a felon, and obstruction of justice. Despite defense counsel's claims that the defense convictions are only supported by his confession, I think there's circumstantial evidence of guilt, which the trial judge drew reasonable inferences from. So I argue there is no corpus delicti issue here all over. It might not be a statement from the defendant saying, I hid the gun from my friend for X reason. I think there's evidence that... Well, how else do you get intent? From what facts can I infer the intent was to obstruct? The intent may have been to recover a gun for my friend and put it in safekeeping, as it were, until my friend asked for the gun. You know, I don't know. The intent to obstruct, that's the difficulty. I'd argue that that's just not normal actions, Your Honor. The defendant in this case entered someone's house he didn't know and put a gun in the freezer. His friend was running down the block. He was in an apartment complex. Maybe he didn't see Officer Maxwell, but if I saw my friend running down the block into an apartment complex and he threw a gun and I put it in the freezer, I'd have the inkling that he was trying to hide it for illegal purposes. So there is no statement that the statement... He was trying to hide it from some gangbangers who were chasing him down the street. But why would he be trying to hide it in that instance? I can't see a purpose besides trying to hide a secret gun that he used in an illegal fashion. He knows he wasn't supposed to have the gun on his person. How do we know that? I think from the evidence, Your Honor, circumstantial evidence. Is it illegal to possess a gun in the city of Chicago? No, it's not, Your Honor. Is it illegal to throw a gun on the sidewalk or in the grass? No, it's not, Your Honor. However, if the defendant in this case had a FOIA card and he was using a gun to protect himself... Now, really, is the state going to take the position that everybody in the city of Chicago, county of Cook, state of Illinois, is supposed to be aware of whether somebody in possession of a gun has or has not a FOIA card? That's not normal activity. My argument, Your Honor, is simply that the defendant's actions and the co-defendant's actions show that the defendant was aware that the co-defendant was not supposed to have a gun on him. If he was legally allowed to have a gun and he was using it to protect himself or what have you, there's truly no argument for him throwing the gun away or asking someone to hide it for him. Do we have any evidence that the person being chased asked the defendant to do anything? Do we? No, Your Honor. The only evidence we have statement-wise is the defendant's admission that he hit the gun because he was friends with the co-defendant. Right. But he wasn't asking? He doesn't even say that. He just says he saw him running into the courtyard and observed him throw a handgun. He doesn't really say why to the police. Is that correct? I believe he said he was childhood friends. He said he was childhood friends. He said he saw him running. He doesn't give a why to the police, why he hit the gun in this alleged statement. His only statement to the police was he was friends with the defendant. Correct. You're correct, Your Honor. Moving on to the issue regarding Taishi Daniel's testimony, testimony hearsay, the people have readily admitted in their brief that the statements regarding the defendant's whereabouts should not have been admitted at trial. However, the people also argue that Taishi Daniel's whether she knew the defendant or not or where the defendant was the night prior had absolutely nothing to do with whether the defendant, in this case, had a motive and opportunity to stash the gun for his friend. Well, the appellate defender is correct. It certainly undermined the defendant's credibility. His entire scenario of what occurred begins with him and his girlfriend's house. And if you don't believe that's his girlfriend, then it's hard to believe anything else. Correct? I don't agree with that perspective. It certainly undermined his credibility, his version of what occurred. I'd argue that his relationship with Taishi Daniel's is irrelevant. Maybe she's his girlfriend. Maybe not. Maybe they just see each other once in a while. She says I don't know him. So he wasn't spending the night at her house if she doesn't know him. I mean, it certainly doesn't do his credibility any good. We do understand that you did bring this prosecution and you did file this case. So you're answering for things that may not have been in the European court. I'd still argue that those statements, if they did have an impact, they were minimal. They were minimal. They truly did nothing to change the outcome of this trial. And regardless of whether she knew him or not, I don't think the trial judge's instance really points to these statements as a reason why she found the defendant guilty on these counts. The issue was forfeited on appeal. But even if this was an error at trial, it's my position that these statements were not prejudicial. Okay. Can you wrap it up, please? Yes, sir. My last point is the judge's sentencing comments were off the cuff. And they shouldn't be viewed as a thing to point out to in a sense that she didn't think that the defendant was guilty of obstruction of justice. Those were just comments that she made in passing. And for these reasons and those expressed in our brief, we ask this court to affirm the defendant's convictions. Thank you. Thank you. Ms. Kinstran, briefly, please. So I'll address primarily counsel's response on Argument 1. Counsel is asking this court to take a circumstantial evidence in this case and infer the element of intent to prevent Hudson's prosecution. And I would just say this. Even if you take Officer Lopez's testimony about Davis' statement as completely true as it required you on appeal, it still doesn't show intent. As I pointed out in my opening argument, there's nothing in there that indicates that Davis knew Hudson was being chased by the police, that he was the subject of an investigation. There's just nothing that goes to intent. Kodorinsky made a good point, though, about circumstantial evidence. And just briefly, it says, quote, the state must present sufficient evidence from which an inference of knowledge can be made and any such inference must be based on established facts and not pyramided on intervening inferences. And that's exactly what the state is asking this court to do in this case. There's just nothing there. So they're making arguments about Davis having the only person in the apartment to have the motive and opportunity to hide the gun. Well, it's simply not true. I mean, both Powell and Davis say that her grandfather, her boyfriend, and her nephew were in the apartment. Even Powell herself, any one of whom could have decided to hide a gun or could have owned the gun and decided we're going to put this gun in the freezer to, you know, protect the children in the apartment or just because that's where we store it. And I would also say that on the other point, it would have been easier if he actually wanted to prevent Hudson's prosecution. It would have been just as easy for him to usher Hudson into the apartment as it would have been to go in and go outside, pick up a gun, and go back into the apartment. So if he was really intent on, if you really want to look at the inferences, he could have as easily hid Hudson if he was that concerned about him being apprehended by the police. And it doesn't show that. So for these reasons and for those set forth in the opening brief, I'd ask this Court to reverse this conviction. Thank you very much. The Court would like to compliment the parties on their briefs and their fine oral argument. It's a very interesting question, and we appreciated your presentations today. With that, the Court will stand in recess on People v. Davis. Thank you.